United States District Court
Southern District of Texas
**ENTERED**
September 07, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| LAWRENCE T.,[1] | § § § | |
| *Plaintiff,* | § § | No. 4:22-cv-903 |
| v. | § § | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | § § § § | |
| *Defendant.* | § § | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Lawrence T. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[2] The Parties filed cross-motions for summary judgment. Pl.'s MSJ, ECF No. 13; Def.'s MSJ, ECF No. 15. Plaintiff seeks an order rendering benefits or remand for further

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On July 25, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Transferring, ECF No. 11.

consideration, arguing first, that the ALJ "did not sustain his burden of showing that there [is] a significant number of jobs exist that [Plaintiff] can perform" either in the national economy or the region where he lives at step five, and second, that "the ALJ and Appeals Council judges had no legal authority to adjudicate this case because they were not properly appointed." ECF No. 14 at 2. Commissioner counters that "[t]he ALJ properly found that Plaintiff could perform other work," and "Ms. Berryhill was validly serving as acting commissioner when she ratified and approved the appointments of SSA ALJs." ECF No. 15-1 at 2, 14. Based on the briefing, the record, and the applicable law, the Court determines that substantial evidence supports the ALJ's determination and Ms. Berryhill was authorized to act. Therefore, Plaintiff's motion for summary judgment should be denied and Commissioner's motion for summary judgment should be granted.

## I.   BACKGROUND

Plaintiff is 65 years old, R. 19, 152,[3] and has an associate degree. R. 175. Plaintiff worked as a fire lieutenant. R. 176, 362. Plaintiff alleges a disability onset date of April 28, 2014. R. 10, 13, 171. Plaintiff claims he suffers physical and mental impairments. R. 27–28, 30, 174.

On November 12, 2019, Plaintiff filed his application for disability insurance

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 9.

2

benefits under Title II of the Act. R. 17, 152–53. Plaintiff based[4] his application on hearing loss and mild neurocognitive disorder. R. 13, 174, 361. The Commissioner denied his claim initially, R. 64–68, and on reconsideration. R. 70–73.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 26. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 25. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 10–20. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1–6.

---

[4] The relevant time period is April 28, 2014—Plaintiff's alleged onset date—through December 31, 2019—Plaintiff's last insured date. R. 12, 13, 341. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel,* 219 F.3d 378, 396 (5th Cir. 2000).

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at step five. R. 20. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. R. 13 (citing 20 C.F.R. 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: hearing loss and mild neurocognitive disorder. R. 13–14 (citing 20 C.F.R. 404.1520 (c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 14 (referencing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the added non-exertional limitations: Plaintiff is limited to a work environment where oral communication takes place face-to-face, and where instructions are short, simple, and clear, where noise is at a moderate level as defined in the Selected Characteristics of Occupations ("SCO"), and he can understand, remember, and carry out simple, routine tasks involving simple, work-related instructions. R. 14–18. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 18. At step five, based on the testimony of the VE and a review of the report, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform occupations in the national economy, including mail clerk, photocopy machine operator, and office helper. R. 19. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 20.

Plaintiff thereafter brought a civil action to challenge the ALJ's decision under 42 U.S.C. § 405(g); on June 1, 2020, Judge Eskridge granted the Commissioner's motion to remand the case. R. 397, 398. *See Lawrence T. v. Saul*, Cause No. 4:22-cv-903 (S.D. Tex. June 1, 2020).   The Appeals Council then issued its order remanding the case to the ALJ, finding that the ALJ "inadequately evaluated whether [Plaintiff] could perform other jobs in the national economy," and instructing the ALJ to update the evidence of Plaintiff's impairments, "[g]ive further consideration to [Plaintiff's] maximum [RFC]," "obtain supplemental evidence from a [VE] to clarify the effect of the assessed limitations on [Plaintiff's] occupational base," and before relying on the VE evidence, "identify and resolve any conflicts between the occupational evidence provided by the [VE] and information in the Dictionary of Occupational Titles (DOT)." R. 402–06.

A subsequent hearing was held before the same ALJ. R. 360. An attorney represented Plaintiff at the hearing. R. 361. Plaintiff and a VE again testified at the hearing. R. 359. The ALJ issued a decision denying Plaintiff's request for benefits.[6]

---

[6] In this subsequent decision, the ALJ determined Plaintiff was not disabled at step five. R. 348. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. R. 341 (citing 20 C.F.R. 404.1571 *et seq*.). At step two, the ALJ found that Plaintiff has the following severe impairments: hearing loss and mild neurocognitive disorder. R. 341–42 (citing 20 C.F.R. 404.1520 (c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 342–43 (referencing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the RFC to perform medium work, as defined by 20 C.F.R. 404.1567(c), but with the added auditory limitations: Plaintiff is limited instruction that are

4

R. 333–53. "Instead of filing exceptions with the [Appeals Council]," Plaintiff

"brought this civil action to challenge the ALJ's decision under 42 U.S.C. § 405(g)."

ECF No. 14 at 2.

## II.    STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision

of the Commissioner that was made after a hearing in which the claimant was a

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to

determining whether that decision is supported by substantial evidence on the record

as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*,

239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

"Substantial evidence" means "such relevant evidence as a reasonable mind might

---

short, simple, and clear, and where oral communication takes place face to face, Plaintiff must have the ability to use volume controls when telephone or audio-visual equipment is utilized, and he can have no more than a moderate level of sound, as defined in the Dictionary of Occupational Titles ("DOT") and SCO. R. 343–46. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 346. At step five, based on the testimony of the VE and a review of the report, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform occupations in the national economy, including hand laundry worker and skin lifter. R. 347. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 348.

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's

findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   THE SHIFTING BURDEN OF PROOF.

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

Commissioner applies a five-step sequential process to determine disability

status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.    COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises two issues. First, Plaintiff argues that, at step five, the ALJ failed to show that there is a significant number of jobs that Plaintiff can perform in the national economy, ECF No. 14 at 3, and second, that the ALJ and Appeals Council judges were not properly appointed. *Id.* at 13. Commissioner responds that the ALJ properly found that Plaintiff could perform other work, and that the ALJ and Appeals Council judges were properly appointed. ECF No. 15-1. The Court finds that the ALJ's finding that Plaintiff could perform other work is supported by substantial evidence, and that Nancy Berryhill properly appointed the ALJ and Appeals Council judges who decided Plaintiff's case.

### A.    The ALJ Appropriately Found Plaintiff Could Perform Other Work.

If a claimant establishes at step four that [he] is unable to perform [his] past relevant work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work which exists in the national economy. The inquiry involves whether work the claimant can perform exists "in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he applied for work." The Social Security Act clarifies that, with respect to any individual, "work which exists in the national economy" means "work which exists in *significant numbers* either in the region where such individual lives or in several regions of the country." The Fifth Circuit has not established a bright-line rule regarding what constitutes a "significant number" of jobs for purposes of step five of the sequential analysis.

*Bailey v. Kijakazi*, No. CV 22-295, 2022 WL 18832044, at *6 (E.D. La. Dec. 8, 2022), *report and recommendation adopted sub nom. Bailey v. Soc. Sec. Admin.*, No. CV 22-295, 2023 WL 2185682 (E.D. La. Feb. 23, 2023) (citations omitted).

"An ALJ may rely on the testimony of a vocational expert at step 5 of the sequential analysis." *Solis v. Colvin*, No. CV H-12-1848, 2013 WL 12106139, at *3 (S.D. Tex. May 22, 2013), *report and recommendation adopted*, No. CV H-12-1848, 2013 WL 12107660 (S.D. Tex. June 11, 2013) (citing *Carey*, 230 F.3d at 145). "Where the vocational expert's testimony conflicts with the DOT,[7] 'the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.'" *Id.* (quoting *Carey*, 230 F.3d at 145).

At the second hearing, the ALJ questioned the VE about whether there were jobs existing in significant numbers in the national economy that someone with Plaintiff's RFC could perform. R. 367–69. The ALJ detailed this hypothetical person

---

[7] "The *Dictionary of Occupational Titles* was promulgated by the Department of Labor to provide 'standardized occupational information to support job placement activities.'" *Short v. Astrue*, No. 3:11-CV-713-N-BN, 2013 WL 655020, at *9 (N.D. Tex. Feb. 5, 2013), *report and recommendation adopted*, No. 3:11-CV-713-N-BN, 2013 WL 655022 (N.D. Tex. Feb. 22, 2013).

as: "an individual of the same age, education, and past work," "limited to the medium level of exertion except instructions must be short, simple, and clear," "[o]ral communication takes place face-to-face, limited to face-to-face," "[m]ust have the ability to use volume controls when telephone or audio visual equipment [is] utilized and no more than a moderate level of noise as defined by the [DOT]." R. 367. The VE testified that there were jobs in the national economy that such an individual could perform: (1) "hand laundry workers," with an SVP of 2 and over 32,000 in the national economy; (2) "salvage workers," with an SVP of 2 and over 16,000 in the national economy; and (3) "skin pickers," with an SVP of 1 and over 6,800 in the national economy. R. 368.[8] The VE also testified that her testimony was consistent with the DOT. R. 369.

Plaintiff's attorney then asked the VE two questions—whether there were any jobs for the hypothetical individual with the added limitation that the person would be off-task, such that he would only produce "80 percent of that of a normal employee," and whether the VE considered any other factors or limitations to the those listed in the hypothetical. R. 369. The VE answered "no" to both questions.

---

[8] "The DOT, along with a companion volume—*The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*—contain descriptions of the requirements for thousands of jobs in the national economy." *Short*, 2013 WL 655020, at *9. "The DOT defines 'SVP,' or 'specific vocational preparation time,' as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Id.* at *10 (quoting *Sutton v. Astrue,* No. 3–08–cv–1117–L, 2010 WL 1685813, at *3 (N.D. Tex. Apr.2, 2010), *rec. adopted,* 2010 WL 1685811 (N.D. Tex. Apr. 23, 2010)).

R. 369. On re-examination, the VE testified that the three jobs she previously provided would still be available for an individual who was limited to understanding, remembering, and carrying out routine tasks involving simple work-related instructions. R. 370. And on re-cross examination, the VE testified that the ALJ's limitation to understanding, remembering, and carrying out simple and routine tasks would preclude the ability to carry out detailed written and oral instructions. R 370.

After the hearing, Plaintiff's attorney submitted a written objection to the VE's testimony on three grounds: (1) "[t]wo of the three occupations identified were reasoning level 2," and therefore, required more than following simple instructions; (2) "[t]he [s]alvage worker job does not align with the hypothetical because it is classified as 'loud,' per the DOT;" and (3) the job of skin lifter "should not be considered significant and the occupation base is eroded." R. 337, 544. The ALJ overruled each objection. R. 338. First, the ALJ stated that the DOT showed that SVP-2 level jobs are "unskilled and require less than 30 days to learn" and "the ability to understand, carry out, and remember simple instruction," R. 338 (cleaned up) (citing 20 C.F.R. § 404.1522(b), SSR 85-15), as opposed to Plaintiff's assertion that these occupations required the ability to carry out detailed written and oral instructions. R. 338. The ALJ then overruled Plaintiff's second objection as moot because the ALJ did not find that Plaintiff "can perform the job of [s]alvage worker."

R. 338.[9] And finally, the ALJ overruled Plaintiff's third objection because the VE testified that the number of jobs in the national economy for skin lifters and hand laundry workers were significant, and the VE, who had been subject to cross-examination by Plaintiff's attorney, was clearly qualified to testify as an expert on the number of jobs in the economy. R. 338–39.

In his brief, Plaintiff asserts that "the VE named only three occupations in response to the ALJ's hypothetical questions and two of those occupations are actually precluded by the restrictions identified by the ALJ[,] while the other occupation does not exist in significant numbers in the national economy." ECF No. 14 at 4. Plaintiff argues that the suggested hand laundry worker position requires the ability to carry out detailed instructions, even though the ALJ limited Plaintiff's RFC to simple instructions. *Id.* at 5–7. Plaintiff also argues that at 6,800 jobs nationally, the remaining occupation of bacon skin lifter does not exist in significant numbers either nationally or regionally. *Id.* at 9, 11.

Commissioner responds that the hand laundry worker's reasoning level is

---

[9] To the extent Plaintiff attacks the VE's credibility based on her erroneous suggestion of salvage worker, and in turn, the ALJ's reliance upon the rest of her testimony, this argument lacks merit. *See Shaw v. Kijakazi*, No. 3:21CV252-JMV, 2022 WL 2679432, at *2–3 (N.D. Miss. July 11, 2022) ("Plaintiff asks this court to reject the entirety of the VE's testimony because the VE identified an allegedly obsolete job position," but "the Supreme Court has declined to impose a categorical rejection, and instead has concluded that the reliability of a vocational expert's testimony should be judged on a case-by-case basis.") (citing *Biestek*, 139 S. Ct. at 1157; *Owen v. Kijakazi*, No. 21-60545, 2022 WL 118427 (5th Cir. 2022) (the Fifth Circuit affirmed the step five finding notwithstanding that the VE identified the arguably obsolete addresser position because the VE identified two other positions that existed in significant numbers in the national economy)).

commensurate with the ALJ's restriction that Plaintiff be limited to instructions that are short, simple, and clear. ECF No. 15-1 at 16. Commissioner continues that merely because the DOT's generic job description lists a certain reasoning level "does not mean that Plaintiff's limitations would prevent him from performing the hand laundry worker job"—instead, the VE's testimony, based on her expertise, is more specific to Plaintiff's RFC. *Id.* at 16, 17 (parenthetical omitted). Commissioner also argues that there is substantial evidence to support the ALJ's finding that the VE's proffered jobs exist in significant numbers because the ALJ relied on the VE's testimony, which "was sufficient to meet the Commissioner's burden." *Id.* at 19, 20.

Under DOT 361.684-010, a hand laundry worker is assessed as SVP 2-unskilled and a level 2 reasoning." DOT 361.684-010.[10] "An unskilled job is 'work which needs little or no judgment to do simple duties.'" *Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *4 (W.D. Tex. Aug. 30, 2013) (quoting 20 C.F.R. § 404.1568). "A limitation to simple, repetitive tasks equates to a limitation to unskilled work." *Id.* (citing *Johnson v. Astrue*, No. 11–3030, 2012 WL 5472418, at *7 (E.D. La. Oct. 5, 2012), *accepted*, 2012 WL 5472303 (E.D. La. Nov. 9, 2012)). Further, a reasoning level 2 position denotes that this individual would "apply

---

[10] "Every job description in the DOT includes a 'general educational development' or 'GED' designation describing the mental abilities that an employee needs to complete that job. GED embraces those aspects of education (formal and informal) which are required of the worker." *Short*, 2013 WL 655020, at *9 (cleaned up).

commonsense understanding to carry out detailed but uninvolved written or oral instructions," but, "[c]ourts have repeatedly found that jobs with a GED reasoning development level 2 are consistent with limitations to simple instructions and routine tasks." *Solis*, 2013 WL 12106139, at *3 (quoting *Short*, 2013 WL 655020 *10 (gathering cases)); *see also Moore v. Saul*, No. 4:19-CV-00195-O-BP, 2020 WL 2487046, at *5 (N.D. Tex. Jan. 31, 2020), *report and recommendation adopted*, No. 4:19-CV-00195-O-BP, 2020 WL 1302324 (N.D. Tex. Mar. 19, 2020); *Osborne v. Colvin*, No. 14-CV-1299-BN, 2015 WL 4755488, at *8 (N.D. Tex. Aug. 12, 2015); *Golas v. Colvin*, No. 3:13-CV-4110-BN, 2014 WL 2587633, at *8 (N.D. Tex. June 10, 2014); *Frazier*, 2013 WL 12393909, at *4. As such, the VE's proffer of hand laundry worker as a job Plaintiff could perform did not conflict with the ALJ's RFC assessment.

Moreover, merely because the DOT describes the hand laundry worker position as a reasoning level 2 position does not mean that reasoning level 2 is required for all such positions. *See Frazier*, 2013 WL 12393909, at *4. "And even if it is[,] [a] limitation to simple, repetitive instructions does not necessarily preclude the application of 'commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[.]' Those instructions still could be 'simple'. . . ." *Id.* (quoting *Welch v. Astrue*, No. 1:11–cv–384–GZS, 2012 WL 3113148, at *6 (D. Me. July 11, 2012) (quoting Appendix C, § III to DOT)). Accordingly, the job

14

of hand laundry worker is consistent with the limitations the ALJ assessed—the ALJ did not err in relying upon the VE's testimony in reaching his conclusion that the Plaintiff could perform other jobs in the national economy.

Because the ALJ was not precluded by any direct or indirect conflict between the VE's testimony, the DOT, and the assessed RFC in making his step five determination, the Court need not consider Plaintiff's remaining argument that 6,800 skin lifter positions in the national economy does not constitute a significant number. Between the number of positions for hand laundry workers and skin lifters, there were 38,800 jobs in the national economy that an individual with Plaintiff's RFC could perform. R. 347, 367–70 (9/29/2021 VE's Testimony). Relying on the VE's testimony, the ALJ found this number to be significant. R. 347–48. *See Rodriguez v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-164-P, 2023 WL 2334440, at *10 (N.D. Tex. Feb. 15, 2023), *report and recommendation adopted*, No. 4:22-CV-00164-P, 2023 WL 2335659 (N.D. Tex. Mar. 2, 2023) ("Because the ALJ extensively questioned the VE and, ultimately, relied on the VE's testimony that jobs exist in significant numbers in the national economy that Rodriguez can perform, substantial evidence supports his finding.") (citing 20 C.F.R. § 404.1566(a)-(e)).[11]

---

[11] Furthermore, an attorney represented Plaintiff at the administrative hearing, and the attorney had ample opportunity to question the VE regarding the validity of the job numbers nationally and regionally. *See Frazier*, 2013 WL 12393909, at *4 ("Without such an objection, the ALJ was within his discretion to rely solely on the uncontested VE testimony.") (citing *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005); *Biestek*, 139 S. Ct. at 1155); *see also Shaw*, 2022 WL 2679432, at *3 ("the vocational expert–whose testimony was not challenged below at all by the Plaintiff's

Accordingly, the Court finds that the ALJ properly considered whether Plaintiff could perform other work and his step five finding was supported by substantial evidence.[12]

## B.   Berryhill Had Authority to Ratify the Appointment of the ALJ and Appeals Council Judges Who Decided Plaintiff's Case.

Plaintiff argues that "the ALJ and Appeals Council members were not properly appointed by former Acting Commissioner Nancy Berryhill nor by any subsequent Commissioner or Acting Commissioner." ECF No. 14 at 13. Plaintiff asserts that these appointments occurred on July 16, 2018, after Berryhill's term ended on November 16, 2017. *Id.* Plaintiff concludes that "Berryhill continuing as

---

counsel–was to the effect that there are an additional 43,000 jobs available for plaintiff in the national economy. Even now, on appeal, Plaintiff has failed to offer any evidence, in this particular case, that this information regarding other jobs is unreliable or otherwise insufficient to satisfy the substantial evidence standard.").

[12] Also, Plaintiff's erosion argument under SSR 83-12 misses the mark. SSR 83-12 recognizes that sometimes an individual's exertional base is higher or lower than a particular range, and in those instances, "the occupational base [of the Grids] is affected and may or may not represent a significant number of jobs." SSR 83-12. In that situation, the ALJ is directed to "consider the extent of any erosion of the occupational base and access its significance," noting that sometimes "the restriction will be so slight that it would clearly have little effect on the occupational base." *Id.* SSR 83-12 advises ALJs to consult a VE where the extent of erosion is unclear. *Id.* Here, the ALJ did not find Plaintiff was between exertion levels, and in any case, relied on the VE's testimony and not the Grids. *See Warren v. Astrue*, No. 6:09-CV-417, 2011 WL 3444268, at *3 (E.D. Tex. Aug. 5, 2011); *see also Fontenot v. U.S. Comm'r of Soc. Sec.*, No. 13-CV-595, 2015 WL 7959319, at *8 (W.D. La. June 22, 2015), *report and recommendation adopted*, No. 2:13-CV-595, 2015 WL 8076508 (W.D. La. Dec. 4, 2015), *aff'd sub nom. Fontenot v. Colvin*, 661 F. App'x 274 (5th Cir. 2016) (ALJ "may look to the [Grids], expert vocation testimony, or other similar evidence," and "is permitted to rely on the expertise of a vocational expert to determine whether the plaintiff's residual work skills can be used in other occupations and in identifying the specific occupations in which those skills may be used.") (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986); 20 C.F.R. 404.1566(e)).

the head of SSA after November 16, 2017[,] violated both the [Federal Vacancies Reform Act ("FVRA")] and the Constitution's Appointment Clause," and therefore, "the actions . . . taken by [] Berryhill after November 16, 2017 were unlawful." *Id.* at 13–14. Commissioner responds that Berryhill was designated under the FVRA, which means that when then-President Donald Trump nominated Andrew Saul to be Commissioner on April 17, 2018, Berryhill resumed her service as Acting Commissioner until Saul was sworn in. ECF No. 15-1 at 3. So, when Berryhill resumed her service and ratified the appointments of all ALJs, those appointments were valid. *Id.*

"The [FVRA] provides that an acting official like Berryhill may serve 'for no longer than 210 days beginning on the date the vacancy occurs; or . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.'" *Ramos v. Kijakazi*, No. 1:21-CV-162, 2023 WL 2745180, at *3 (S.D. Tex. Mar. 31, 2023) (citing 5 U.S.C. §§ 3346(a)(1)–(2)). "For 'any vacancy that exists during the 60-day period beginning on a transitional inauguration day,' such as the SSA Commissioner vacancy, the 210-day period does not begin to run until 90 days after the vacancy occurs." *Id.* (quoting 5 U.S.C. § 3349a(b)).

Indeed, on January 21, 2017, Berryhill began serving as Acting Commissioner, and her 210 days of service under Sections 3346(a)(1) and 3349a(b)

ended on November 16, 2017. *See Silva v. Kijakazi*, No. 2:21-CV-00301, 2022 WL 18144262, at *6 (S.D. Tex. Oct. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-00301, 2023 WL 123789 (S.D. Tex. Jan. 5, 2023) (citing *Williams v. Kijakazi*, No. 1:21-cv-141-GCM, 2022 WL 2163008, at * 2 (W.D. N.C. June 15, 2022). And on April 17, 2018, the President nominated Saul as the Commissioner of SSA. *See id.* (citing Letter from Thomas H. Armstrong, U.S. Gov't Accountability Off. Gen. Couns., to Donald Trump, U.S. President (March 6, 2018), https://www.gao.gov/assets/ b-329853.pdf). "Upon the nomination of Saul, Berryhill resumed her position as Acting Commissioner during the pendency of his confirmation process, and it was during this process [on July 16, 2018,] that Berryhill ratified the appointment of the ALJs and Appeals Council judges." *Ramos*, 2023 WL 2745180, at *3.[13]

As support for his position, Plaintiff cites *Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022). "The Eighth Circuit, however, has since reversed the district court's decision in *Brian T. D.*" ." *Ramos*, 2023 WL 2745180, at *4 (citing *Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023)). "And even before it was reversed, *Brian*

---

[13] "Berryhill took this step in response to the Supreme Court's holding that the Securities and Exchange Commission's ALJs were 'Officers of the United States' that, in accordance with the Appointments Clause, must be appointed by the president, a court of law, or a head of department." *Ramos*, 2023 WL 2745180, at *3 (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018)). "In response to *Lucia* and '[t]o address any Appointments Clause questions involving Social Security claims,' Berryhill ratified and approved the then-serving ALJs and Appeals Council judges 'as her own.'" *Id.* (quoting Notice of Social Security Ruling, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019)).

*T. D.* represented an outlier," as recognized by numerous other courts. *See id.*; *see also Silva*, 2022 WL 18144262, at *7 ("[t]he undersigned recommends, as have the majority of other courts, that 'the plain language of the statute authorizes acting service in two instances: during the initial 210 days after a vacancy is created, and while a nomination is pending.'") (quoting *Bauer v. Kijakazi*, No. 21-cv-2008-KEM, 2022 WL 2918918, at *8 (N. D. Iowa July 5, 2022) (finding the disjunctive "or" instead of the word "either" in the statute allows one individual to serve during both of the periods set out in § 3346(a))). "Like the Eighth Circuit, district courts considering the same issue have concluded that the FVRA's use of the word 'or' in Section 3346(a) 'enabled [Berryhill] to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018.'" *Ramos*, 2023 WL 2745180, at *4 (quoting *Seago v. Kijakazi*, No. 1:21-CV-136, 2022 WL 17853369, at *6 (S.D. Tex. Nov. 15, 2022), *report and recommendation adopted*, No. 1:21-CV-00136, 2022 WL 17852795 (S.D. Tex. Dec. 22, 2022) (quoting *Thomas S. v. Comm'r*, No. C21-5213-MAT, 2022 WL 268844, at *3 n.2 (W.D. Wash. Jan. 28, 2022); *Brent Z. v. Kijakazi*, No. 22-CV-511 (JWB/JFD), 2023 WL 1110449, at *10 (D. Minn. Jan. 30, 2023), *report and recommendation adopted*, No. CV 22-511 JWB/JFD, 2023 WL 2414594 (D. Minn. Mar. 8, 2023) (collecting cases concluding the same)).

The Court finds, as these courts also found, that "[u]pon the nomination of

Saul, Berryhill possessed the statutory authority to resume her role as Acting Commissioner, which means that she had the power in July 2018 to ratify the appointment of the ALJs and the Appeals Council judges, including the ones that considered [Plaintiff's] case." *See id.*; *see also Silva*, 2022 WL 18144262, at *7 ("Therefore, the undersigned recommends Ms. Berryhill had the statutory authority to ratify all appointments in 2018 and Plaintiff's argument is without merit.").

## V.      CONCLUSION

It is therefore **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 13, is **DENIED**. It is further **ORDERED** that Commissioner's motion for summary judgment, ECF No. 15, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on September 6, 2023.


**Dena Hanovice Palermo**
**United States Magistrate Judge**